DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that granted permanent custody of Dustin, Austin and Robert S. to appellee Lucas County Children Services Board ("LCCS"). For the reasons that follow, this court affirms the judgment of the trial court.
Appellant Robert S., the natural father of Dustin, Austin and Robert, sets forth the following assignments of error:
 "I. THE TRIAL COURT ERRED IN FINDING THAT THE LUCAS COUNTY CHILDREN SERVICES BOARD HAD MADE A GOOD FAITH EFFORT TO REUNIFY THE MINOR CHILDREN WITH APPELLANT.
 "II. THE TRIAL COURT ERRED IN GRANTING LUCAS COUNTY CHILDREN SERVICES BOARD'S MOTION FOR PERMANENT CUSTODY AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO GRANT IT."
The facts that are relevant to the issues raised on appeal are as follows. On January 12, 2001, the trial court received a request from LCCS for emergency shelter care for Dustin, born September 3, 1992; Austin, born June 27, 1995, and Robert, born June 7, 1997. LCCS informed the magistrate that eight-year-old Dustin had stabbed another child and was being held in the Child Study Institute and that appellant had also been arrested in connection with the incident. Although the children's mother was under an order at that time to have no contact with either the children or appellant, LCCS believed that she had been living with them for the past four months. The agency further stated that there were no appropriate relative placements. The magistrate found that the children were in imminent danger of physical and/or emotional harm and issued anex parte order for LCCS to take the children into shelter care immediately.
On January 16, 2001, the agency filed a complaint in dependency, neglect and abuse and a motion for a shelter care hearing. The shelter care hearing was held that same day. In its complaint, LCCS alleged that: 1) the children's mother had been abusing them since 1992, by slapping, hitting, kicking, scratching, choking, and immersing them in hot water; 2) when Dustin was two years old, he was sexually molested by a relative; Austin was sexually molested by a babysitter when he was approximately three years old, and was sexually molested by his brother Dustin, as was three-year-old Robert; and Dustin had sexually molested a cousin; 3) appellant was aware of the instances of sexual abuse; 4) there was a history of domestic violence between appellant and the children's mother; 5) in August 1999, the mother was ordered to have no contact with appellant or the children, but continued to live with them; 6) appellant also had his fifteen-year-old girlfriend living in the home; 7) Dustin suffers from attention deficit hyperactive disorder but appellant and the children's mother have failed to keep medical appointments for the child or obtain the medication he requires; 9) Dustin stabbed a classmate with a pencil and has threatened other students, and 10) on January 11, 2001, in the presence of his parents, Dustin stabbed another student with a knife, and he and appellant were arrested as a result of the incident.
At the conclusion of the hearing, the magistrate ordered that temporary custody of the three children be awarded to LCCS. The trial court appointed guardians ad litem for the children as well as legal counsel for the children and each parent. On February 27, 2001, LCCS filed an amended complaint in which it added several allegations as to the situation facing the children and their parents.
On March 1, 2001, the matter came on for an adjudicatory hearing. At that time, the parents agreed to numerous findings of fact based on the allegations in the complaint, and consented to a finding that the children were dependent, neglected and abused. The parties agreed to continue the disposition of the case with the understanding that LCCS would be amending the complaint to ask for permanent custody of the children.
On March 28, 2001, LCCS filed a second amended complaint, in which the agency asked for permanent custody of all three children. In its amended complaint, the agency restated many of the allegations contained in the earlier complaints and further alleged that: 1) LCCS has received at least seventeen referrals alleging neglect or abuse of the children since 1992, several of which were substantiated; 2) services have been offered to the parents, including counseling, parenting classes and day care for the children; 3) despite the extensive services, the children have significant problems and have been at risk many times, with Dustin being the most damaged; 4) Dustin was hospitalized for psychiatric medical care for approximately one month and was diagnosed with post-traumatic stress disorder and ADHD; his psychosocial stressors were characterized as extreme in severity, and it was recommended that he be placed in therapeutic foster care, where he remains at this time; 5) Robert, at the age of three, has shown the same aggressive tendencies as his older brothers and had to be moved from one foster home because he punched a baby in the nose; 6) although the parents have participated in parenting classes and have engaged in several therapy sessions to address relationship and anger management problems, they did so with questionable success or showed by later behavior that they had failed to learn necessary skills; 7) appellant attended a parenting class in 1998, but the instructor reported that he appeared disinterested and oppositional, and completed the program with minimal progress; further classes were recommended for both parents; 8) despite the parents having attended an ADHD parenting class in 1999, the agency received several referrals that year; 9) appellant completed a parenting class in March 2000, but attended only seven of twelve sessions and his participation was reported as minimal; 10) of twenty scheduled follow-up visits with a caseworker, appellant was available for only four; 11) appellant's health is problematic; he has been hospitalized and reports having a terminal condition and 12) appellant appears to have impairment of intellectual functioning and memory, with his intellectual functioning assessed as below average.
A dispositional hearing was held on April 30 and May 3, 2001. Appellant was present at the hearing and represented by counsel. Although duly served and notified, the children's mother did not appear and her counsel asked to withdraw based on a lack of contact and direction from his client as to how to proceed on her behalf; counsel's request was granted.
At the hearing, LCCS presented the testimony of numerous individuals who had contact with the family and who provided various services. These witnesses included a psychiatrist who treated Dustin, three foster parents, the boys' school principal and a school counselor, three caseworkers, and several people who worked with appellant and the children to provide services such as psychological assessment, counseling and parenting education.
Beverly Palmer, an investigator assessment caseworker with LCCS, testified that she worked with the family for a year, beginning in March 1999, after the agency received a referral alleging neglect. She stated that the agency had received referrals as far back as 1992, several months after Dustin was born. Palmer testified that her job was to assess their situation and attempt to put in place a support system for appellant. Palmer testified that several of the referrals the agency received while she worked on the case were based on a lack of supervision of the children. She stated that she attempted to explore this issue with the parents but that the mother was never home and appellant was left to parent the children on his own. Palmer made more than a dozen attempts to contact appellant and the children after another referral during the summer of 1999 but could not locate them. She re-established contact after the agency received another referral. She testified that appellant did not always follow through with her recommendations and that she had difficulty contacting him. She further testified that the family did not complete any service it was involved in through 1999. After a fourth referral, Palmer and her supervisor determined that the agency should open the case for services and the case was assigned to caseworker Shelly Ventresca, who referred appellant to counseling and parenting classes.
Palmer further testified that after the case was opened in 1999, the agency decided to leave the children with their father, with a support system of assistance and services in place. This included assistance from the agency's community development department, which provided intensive services to make sure that the children's needs were met. Palmer testified that appellant said he was willing to work with the agency but she said appellant had "marginal follow-through." Palmer stated that she took the family to the Department of Human Services, drove appellant to various places with the children, spoke with school personnel, and in general attempted to ensure that the situation had stabilized at that time. Appellant never initiated counseling but did attempt parenting classes at the agency. An ADHD parenting class was recommended to appellant but he did not attend.
Ventresca also had difficulty contacting appellant. She testified that she attempted to get appellant to enroll Austin in Head Start but appellant did not follow through. The supervisor of a parenting class testified that appellant did not complete the class and met with the instructor only four times out of a scheduled twenty to assess his interaction with the children. After January 2000, appellant was unavailable.
The record further indicates that Dustin underwent assessment and worked with a therapist at Connecting Point and Austin had an assessment at Harbor Behavioral Healthcare. Robert was being seen by a therapist through the Child Advocacy Center.
Nikki Caldwell, the most recent caseworker for the family, testified to assessments of the children, services provided them and their father, and to her visits with the family. She testified that LCCS had developed a case plan for appellant before the agency decided to request permanent custody. When she became involved with the family in January 2001, Caldwell asked appellant to undergo a substance abuse assessment and a diagnostic assessment at an approved facility, and to become involved in another parenting program.
On May 23, 2001, the trial court filed its judgment entry in which it found that: 1) there was clear and convincing evidence that the children could not or should not be placed with either of their parents within a reasonable time and that an award of permanent custody to LCCS was in the children's best interest; 2) for many years, the children have lived in a home where they have been abused and neglected by their parents; 3) the parental shortcomings are so extreme that the children have suffered significant harm that is not likely to be easily remedied; 4) if the children were placed with either parent the harm is likely to recur, thus making reunification a threat to the children's safety; 5) the parents have been referred to services repeatedly with minimal or no attendance, to the extreme detriment of the children; 6) although appellant says he will participate in services, he has said the same thing in the past and has failed to follow through; 7) the children are in need of specialized care that cannot be provided by their parents now or in the foreseeable future; 8) no appropriate relative has sought placement or custody, and 9) LCCS has exercised reasonable efforts in this case by referring the parents to counseling services for themselves and the children and to parenting classes over a period of several years. The trial court granted the motion for permanent custody and it is from that judgment that appellant timely appeals.
In his first assignment of error, appellant argues that the trial court erred by finding that LCCS had made a good faith effort to reunify appellant with his children. In his second assignment of error, appellant asserts that the trial court's decision to award permanent custody to LCCS was against the manifest weight of the evidence.
R.C. 2151.353 provides as follows:
 "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
"* * *
 "(4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414 * * * of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 * * * of the Revised Code that the permanent commitment is in the best interest of the child. * * *"
R.C. 2151.414(E) provides that:
 "* * * If the court determines, by clear and convincing evidence, at a hearing held * * * for the purposes of division (A)(4) of section 2151.353 * * * of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent: * * *."
"* * *
 "(15) The parent has committed abuse as described in section 2151.031 * * * of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with t he child's parent a threat to the child's safety.
"(16) Any other factor the court considers relevant."
As to appellant's first assignment of error, we note that the trial court did not, as appellant claims, make a finding that LCCS had made a good faith effort to reunify appellant with his children. The trial court did find that LCCS had "exercised reasonable efforts in this case" by referring the parents to various services for themselves and the children. As for efforts toward reunification, the trial court was not required by the applicable statute to make such a finding. As indicated above, R.C. 2151.414(E) sets forth sixteen factors upon which the trial court may rely in making a finding that a child cannot be placed with either parent within a reasonable time or should not be placed with either parent. In making such a finding, the trial court need only find that one of the factors exists, although it may base its finding on more than one, if applicable. R.C. 2151.414(E)(1), which sets forth a factor upon which the trial court in this case did not rely, refers to "reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home * * *." The trial court clearly did not focus on diligent efforts by the agency to work toward reunification because the agency was asking for permanent custody, which made the issue of reunification moot.
Based on the foregoing, this court finds appellant's first assignment of error not well-taken.
In support of his second assignment of error, appellant argues that the trial court's decision was not supported by the weight of the evidence. R.C. 2151.414(E), supra, provides that the trial court's finding must be based on clear and convincing evidence. Clear and convincing evidence is that degree of evidence that will create in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of syllabus. It is our duty to review the record to determine whether there was sufficient evidence before the trial court to meet the clear and convincing standard. State v. Schiebel (1990), 55 Ohio St.3d 71, 74.
Based upon the evidence as summarized above, this court finds that LCCS presented sufficient evidence to create in the mind of the trial court a firm conviction that Dustin, Austin and Robert S. could not be placed with either parent within a reasonable time or should not be placed with them, and that it was in the children's best interest to grant permanent custody to Lucas County Children Services Board. Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
James R. Sherck, J., Mark L. Pietrykowski, P.J. CONCUR.